[Cite as *Banas v. Shively*, 2011-Ohio-5257.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96226**

## GALINA BANAS

PLAINTIFF-APPELLANT

vs.

## GLEN M. SHIVELY

DEFENDANT-APPELLEE

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-696774

**BEFORE:** E. Gallagher, J., Jones, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** October 13, 2011

**ATTORNEY FOR APPELLANT**

Michael P. Maly
5001 Mayfield Road
Suite 319
Lyndhurst, Ohio    44124

**ATTORNEYS FOR APPELLEE**

Michael A. Paglia
Ritzler, Coughlin & Paglia, Ltd.
1360 East Ninth Street
1000 IMG Center
Cleveland, Ohio    44114

Joyce V. Kimbler
50 South Main Street
Suite 502
Akron, Ohio    44308

EILEEN A. GALLAGHER, J.:

**{¶ 1}**  Plaintiff-appellant, Galina Banas ("Banas") appeals the judgment of the Cuyahoga County Common Pleas Court and the trial court's denial of her motion for a new trial.   Finding no merit to the appeal, we affirm.

**{¶ 2}**  Banas was involved in a motor vehicle accident with appellee, Glen Shively, on July 3, 2007.   Appellee's vehicle collided with appellant's vehicle and pushed appellant off the road, causing her to strike a large rock.   Banas filed suit in the Cuyahoga County Common Pleas Court.   Although negligence was admitted by

–3–

appellee, the parties disputed the issues of causation and damages.

{¶ 3} Banas testified that her speed at the time of the collision was between 30 and 35 miles per hour. Appellant testified that immediately after the collision, she experienced pain in her head, neck, shoulder, back, and ears. Appellant stated that she did not leave her vehicle after the collision until an ambulance arrived on scene and she was removed from her vehicle by responders.

{¶ 4} Banas was taken to Huron Road Hospital where she was treated and released. Contrary to her testimony, the emergency room records reflect that the accident was a low speed accident with a "glancing" blow-type collision. The emergency room records further indicate that appellant was walking at the scene, a fact that appellant denied at trial. Though the emergency room record reveals that appellant reported pain in her head, neck, and back, it states that appellant's neck and back were "non-tender." Finally, the emergency room record reflects that appellant was discharged in "good" condition and that her condition had improved by the time of discharge.

{¶ 5} Appellant testified that she sought further treatment from a primary care physician three days after the accident because she was in "horrible pain." Beyond her primary care physician, appellant obtained treatment from a number of doctors including a chiropractor, Dr. Michael Jakubowski. Appellant testified that she saw Dr. Jakubowski seven to eight times, twice a week. A report from Dr. Jakubowski indicated that, "[a]s of August 15th, 2007, [Mrs. Banas's] complaints are of mild neck

pain on the left that is increased with daily activity. However she also stated that there was no mid to lower back complaints and that her signs and symptoms in her cervical spine have been reduced by 90%."

{¶ 6} Appellant testified that on July 19, 2007, she was a rear-seat passenger in a car driven by her husband when the car was involved in a rear-end collision. Appellant testified that she was not injured in this second accident. Appellant described the July 19th collision as a "small hit on [the] bumper," and testified that she did not seek any medical treatment for the accident.

{¶ 7} Contrary to appellant's assertion that she was not injured in the second accident, a record from appellant's primary care doctor, dated July 20, 2007, indicates that appellant complained of a "whiplash" injury. Records reveal that appellant again treated with her primary care physician on July 25, 2007 to re-assess injuries from the July 19, 2007 accident.

{¶ 8} Though appellant denied sustaining any injury in her second motor vehicle accident, appellee impeached her testimony at trial by introducing a copy of a Lake County lawsuit stemming from the July 19, 2007 accident wherein appellant alleged that she sustained injuries in excess of $125,000.[1]

---

[1] Paragraph 11 of appellant's Lake County complaint states: "As a direct and proximate result of [Defendant's] breach of duty Plaintiffs sustained injuries and damages, and will continue to incur future damages that exceed the limit of [Defendant's] liability insurance coverage under of a policy of insurance with

{¶ **9**}   Appellant testified at trial that she lost her job and did not work much after the accident because she is unable to do any lifting.   Appellee impeached this testimony with evidence that appellant earned more money through her employment in the year following the accident than she did in several years prior to the accident.

{¶ **10**} Appellant's medical treatment culminated with spinal surgery in Februrary of 2010.   Appellant's surgery was performed by Dr. Timothy Moore, who opined at trial, to a reasonable degree of medical certainty, that appellant's surgery was causally related to her July 3, 2007 accident.   Appellee contested the basis of Dr. Moore's causation opinion, eliciting testimony that Dr. Moore's opinion was, in large part, based upon subjective reports of symptoms and when they initially occurred, as   provided to him by appellant.   Notably, appellant failed to disclose her second car accident to Dr. Moore.   Furthermore, Dr. Moore did not review appellant's emergency room records, or her records from her primary care physician or chiropractor, nor any records prior to appellant's July 3, 2007 accident.   Dr. Moore was also unaware of records from appellant's chiropractor indicating that appellant's symptoms were 90% better as of August 15, 2007.

{¶ **11**} Lastly, Dr. Moore testified that appellant's medical records revealed that

---

Progressive Insurance Company, such limit being $25,000 per person.   Accordingly, [Defendant] is underinsured * * *"   Paragraph 13 states: "Under Plaintiffs' insurance policy with Esurance they are is entitled to Uninsured / Underinsured Motorists Coverage in the amount of $100,000 per person."

she had bone spurs indicative of arthritis in the neck that pre-existed the July 3, 2007 accident. The pre-existing arthritis was at the same location on appellant's spine that Dr. Moore performed the surgery.

{¶ 12} At trial, appellant sought $82,494 in medical bills including $69,373.66 from the surgery. The jury returned a verdict in favor of appellant in the amount of $7,338.21 of which $3,695.35 was attributed to past economic damages and the remainder to non-economic damages.

{¶ 13} Appellant filed a motion for a new trial on September 16, 2010, which the trial court denied on November 29, 2010. Appellant appealed from the judgment of the trial court asserting the four assignments of error contained in the appendix to this opinion.

{¶ 14} Appellant argues in her first assignment of error that the jury's award of $7,338.21, including $3,695.35 for past economic damages, was against the manifest weight of the evidence.

{¶ 15} It is a basic principle of appellate review that judgments supported by competent, credible evidence going to all the material elements of a case must not be reversed as against the manifest weight of the evidence. *Berry v. Lupica*, Cuyahoga App. No. 95393, 2011-Ohio-3464, at ¶21, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 1994-Ohio-432, 638 N.E.2d 533. "We therefore indulge every reasonable

presumption in favor of the trial court's judgment, and to the extent that the evidence is susceptible to more than one interpretation, we construe it consistently with the jury's verdict." Id. (Internal citations omitted.)

{¶ 16} "[I]t is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178. That is, an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶ 17} Appellant argues that the jury's award of $3,695.35 in economic damages, representing the amount of medical bills from July 3, 2007 until July 18, 2007, the date prior to appellant's second motor vehicle accident, is against the manifest weight of the evidence.[2] Appellant argues that she established by uncontroverted evidence that the entire $82,494.63 in medical bills sought by her were caused by the July 3, 2007 accident. We disagree.

{¶ 18} While appellee admitted his negligence in the subject accident, he disputed at trial the issues of causation and damages. As set forth above, appellee repeatedly

---

[2]Appellant cites her trial exhibit B and states in her brief that $3,695.35 represents the amount of medical bills accumulated by appellant from the date of the accident (July 3, 2007) until the day prior to her second accident (July 18, 2007). A review of appellant's medical bills in exhibit B, some of which lack discernable

challenged appellant's credibility, the extent of her injuries, and whether or not appellant's injuries were proximately caused by the subject accident.

{¶ 19} Appellant argues that the expert testimony of Dr. Moore was uncontroverted and, thus, the jury was bound to accept his opinion that her largest claimed item of damages, the expenses from her surgery, were proximately caused by the subject accident. Appellant's position is flawed. Initially, though appellee did not offer his own expert witness at trial, he did extensively challenge the basis of Dr. Moore's opinion. Appellee pointed out that Dr. Moore possessed no knowledge of appellant's condition prior to the accident, that he did not review appellant's entire medical record stemming from the accident, that he based his opinion, in significant part, upon the subjective reports of pain provided by appellant, and that he was unaware of appellant's second motor vehicle. Most importantly, Dr. Moore acknowledged that appellant's records indicated that she had bone spurs in the same location where he performed surgery that were indicative of arthritis that pre-existed the subject motor vehicle accident.

{¶ 20} Beyond appellee's challenge to the basis of Dr. Moore's opinion, appellant's argument that the jury was bound to accept Dr. Moore's proximate cause conclusion is misplaced. "It is well established that the jury, as the trier of fact, is

---

chronological order, reveals a total of $3,215.35 in medical bills during this period.

vested with the power to judge the credibility of witnesses and to determine the weight to be afforded to the evidence presented." *DeCapua v. Rychlik,* Cuyahoga App. No. 91189, 2009-Ohio-2029, at ¶23, quoting *Croft v. State Farm Mutual Auto. Ins. Co.*, 3d Dist. No. 1-01-72, 2002-Ohio-113, citing *Swan v. Skeen* (1974), 40 Ohio App.2d 307, 308-309, 319 N.E.2d 221. A jury is free to accept or reject any or all the testimony of any witness, including testimony of an expert witness. Id., citing *Weidner v. Blazic* (1994), 98 Ohio App.3d 321, 335, 648 N.E.2d 565.

{¶ 21} "[T]he jury is not required to give any additional weight to the opinion of an expert, if any weight at all. Rather, an expert's opinion is admissible, as is any other testimony, to aid the trier of fact in arriving at a correct determination of the issues being litigated. Expert testimony is permitted to supplement the decision-making process of the fact finder, not to supplant it." *Sawyer v. Duncan* (Dec. 14, 2000), Cuyahoga App. No. 78056. "[T]he mere fact that testimony is uncontradicted, unimpeached, and unchallenged does not require the trier of fact to accept the evidence if the trier of fact found that the testimony was not credible." *DeCapua*, at ¶25, citing *Bradley v. Cage*, 9th Dist. No. 20713, 2002-Ohio-816. "The trier of facts always has the duty, in the first instance, to weigh the evidence presented, and has the right to accept or reject it." Id., quoting *Ace Steel Baling v. Porterfield* (1969), 19 Ohio St.2d 137, 138, 249 N.E.2d 892.

{¶ 22} "[S]imply because plaintiff's expert testified that the billings were

necessitated by the accident, they are not automatically entitled to prevail on the question of necessity, even where their expert's testimony on that point is not directly controverted by defendant's evidence, so long as there appear in the record objectively discernible reasons upon which the jury could rely to reject the expert's opinion testimony." Id., citing *Walker v. Holland* (1997), 117 Ohio App.3d 775, 794, 691 N.E.2d 719, quoting *Muncy v. Jones* (Jan. 19, 1984), 10th Dist. No. 83AP-562; see, also, *McBride v. Quebe*, 2d Dist. No. 21310, 2006-Ohio-5128.

{¶ 23} Here, as in *DeCapua*, the jury obviously found that appellant's damages were not all proximately caused by the accident. As in *DeCapua*, although appellant submitted $82,494.63 in medical bills supported by her own testimony and the expert opinion of Dr. Moore, the jury was free to disbelieve their testimony based on other evidence in the record.

{¶ 24} Upon review of the entire record we cannot say that the jury's verdict was against the manifest weight of the evidence.

{¶ 25} Appellant's first assignment of error is overruled.

{¶ 26} Appellant argues in her second assignment of error that the jury's award was contrary to law in that appellee failed to apportion liability for appellant's injuries between himself and the non-party tortfeasor involved in appellant's July 19, 2007 motor vehicle accident. Appellant argues that pursuant to R.C. 2307.23(C) and the Ohio Supreme Court's decision in *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d

1313, appellee had a burden, at trial, of apportioning responsibility for appellant's claimed medical bills between himself and the non-party tortfeasor.

{¶ 27} *Pang* involved a plaintiff who was involved in three successive motor vehicle accidents over a five-month period. All three accidents contributed to an injury to Pang's back and an eventual diagnosis of chronic lumbosacral myofascitis. Pang's doctor concluded that the condition was the result of the three motor vehicle accidents. The Ohio Supreme Court held that, "where a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm." *Pang* at 197. Once the plaintiff has established that his single, indivisible injury was proximately caused by the successive tortious acts of multiple defendants, the burden of persuasion shifts to the defendants to demonstrate that the harm produced by their separate tortious acts is capable of apportionment. Id. at 197-198.

{¶ 28} In the case sub judice, we find appellant's reliance on *Pang* to be misplaced. In *Pang*, the Court noted that proximate cause was clearly established as to each defendant. Such is not the case here. As discussed above, in the present case, appellee challenged the extent of appellant's injuries and whether or not appellant's claimed medical expenses were proximately caused by the subject accident. As addressed in appellant's first assignment of error, competent and credible evidence was adduced at trial from which the jury could reasonably conclude that not all of the

damages sought by appellant were proximately caused by the subject accident.

{¶ 29} Futhermore, unlike *Pang*, appellant offered absolutely no evidence to establish that she suffered a single injury as a result of the tortious acts of multiple defendants. In fact, appellant expressly denied being injured in the July 19, 2007 accident. Appellant's theory was that all her injuries were proximately caused by appellee. *Pang* is inapplicable to the present case.

{¶ 30} Appellant's reliance on R.C. 2307.23(C) is similarly misplaced. R.C. 2307.23(C) provides:

> "(C) For purposes of division (A)(2) of this section, it is an affirmative defense for each party to the tort action from whom the plaintiff seeks recovery in this action that a specific percentage of the tortious conduct that ***proximately caused*** the injury or loss to person or property or the wrongful death is attributable to one or more persons from whom the plaintiff does not seek recovery in this action. Any party to the tort action from whom the plaintiff seeks recovery in this action may raise an affirmative defense under this division at any time before the trial of the action." (Emphasis added.)

{¶ 31} Appellant seeks to wield the affirmative defense provided in R.C. 2307.23(C) against appellee, arguing that appellee admitted that he was at least partially liable for plaintiff's injuries and the jury's verdict of $7,338 supports this conclusion. Appellant argues that appellee had the burden of proving the apportionment of appellant's damages between the subject accident and the July 19, 2007 accident by clear and convincing evidence and that he failed to do so.

{¶ 32} Appellant's argument is not supported by the record. Appellee did not

raise R.C. 2307.23(C) as an affirmative defense. Furthermore, contrary to appellant's characterization, appellee did not admit that he was "at least partially responsible" for all of appellant's medical bills. Appellee challenged whether certain *portions* of appellant's claimed medical expenses were proximately caused by the subject accident. Appellee specifically argued in closing argument, "My client admits that he's at fault but does not admit any of this medical treatment was from this car wreck. The only thing possibly that is from the car wreck is the emergency room and a follow-up visit." Appellee took the position that he was responsible for certain medical bills directly related to the subject accident but strongly disputed proximate cause for the vast majority of the medical bills that accumulated later in time. The jury's verdict is consistent with appellee's argument that certain bills were related to the accident and others were unrelated. R.C. 2307.23(C) is inapplicable to the present case.

{¶ 33} Appellant's second assignment of error is overruled.

{¶ 34} Appellant argues in her third assignment of error that the trial court erred in allowing appellee to introduce a complaint from a Lake County lawsuit stemming from appellant's July 19, 2007 motor vehicle accident.

{¶ 35} The Lake County complaint alleges that appellant was a passenger in her husband's car on July 19, 2007 when it was involved in a rear-end collision. The complaint specifically states that appellant, "sustained damages and injuries, costs of medical treatment, pain and suffering and other damages" as a result of the accident.

The complaint seeks recovery from the named defendant in excess of the defendant's insurance policy, "such limit being $25,000 *per person*." (Emphasis added.) The complaint further seeks recovery against her husband's motor vehicle insurer based pursuant to uninsured/underinsured motorists coverage, "in the amount of $100,000 *per person*." (Emphasis added.)

{¶ 36} Generally, evidentiary rulings made at trial rest within the sound discretion of the trial court. *State v. Lundy* (1987), 41 Ohio App.3d 163, 169, 535 N.E.2d 664; *State v. Graham* (1979), 58 Ohio St.2d 350, 390 N.E.2d 805. "The term 'abuse of discretion' connotes more than error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 37} Pursuant to Evid.R. 611(B), the scope of cross-examination extends to "all relevant matters and [to] matters affecting credibility." Under Evid.R. 613(B) and 801(D)(2), the admissions of a party-opponent may be introduced into evidence for purposes of impeachment. See *Pesic v. Pezo*, Cuyahoga App. No. 90855, 2008-Ohio-5738, at ¶28. (Opposing party can use motor vehicle accident complaint to impeach credibility.)

{¶ 38} In the present case, appellant's Lake County complaint was admissible for impeachment purposes after appellant expressly denied suffering any injury in her July 19, 2007 accident. Appellant's position at trial was that the subject accident

proximately caused all of her medical bills and that she suffered no harm in the July 19, 2007 accident. Appellant's Lake County complaint refutes this position and her testimony. As in *Pesic*, appellant's expert was unaware of the other accident despite providing testimony that appellant's medical treatment was proximately caused by the subject accident. The complaint undermined appellant's position that she was uninjured in the July 19, 2007 accident and called into question the basis of her expert's opinion. The trial court did not abuse its discretion in allowing the introduction of this evidence.

{¶ 39} Appellant argues in her fourth assignment of error that the trial court erred in denying her motion for a new trial. Appellant argues that the trial court should have granted her motion for a new trial because the jury's verdict was inadequate, was made under the influence of passion or prejudice, and was against the manifest weight of the evidence.

{¶ 40} Though not explicitly argued by appellant, we note that Civ.R. 59(A)(6) authorizes the trial court to vacate a judgment and order a new trial on a finding that the verdict on which the judgment was entered "is not sustained by the weight of the evidence." As we addressed in appellant's first assignment of error, the contention that the jury's verdict was against the manifest weight of the evidence is not supported by the record.

{¶ 41} Appellant bases her arguments on Civ.R. 59(A)(4), which allows a new

trial to be granted based upon, "[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice."

{¶ 42} "[T]he assessment of damages lies 'so thoroughly within the province of the [trier of fact] that a reviewing court is not at liberty to disturb the [trier of fact's] assessment' absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive or inadequate."  *Pesic*, at ¶21, quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 1994-Ohio-324, 635 N.E.2d 331.

{¶ 43} A reviewing court should not find that a verdict is inadequate unless "the inadequacy of the verdict is so gross as to shock the sense of justice and fairness, or the amount of the verdict cannot be reconciled with the undisputed evidence in the case, or it is apparent that the jury failed to include all the items of damages comprising a plaintiff's claim."  *Pearson v. Wasell* (1998), 131 Ohio App.3d 700, 709-710, 723 N.E.2d 609, citing *Iames v. Murphy* (1995), 106 Ohio App.3d 627, 666 N.E.2d 1147.

{¶ 44} To determine whether a verdict was influenced by passion or prejudice, the court should consider the amount of damages returned and whether the record discloses that the verdict was induced by: "(a) admission of incompetent evidence, (b) misconduct on the part of the court or counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded."  *Fromson & Davis Co. v. Reider* (1934), 127 Ohio St. 564, 569, 189 N.E. 851; see, also, *Rinehart v. Brown*, 4th Dist. No.

05CA2854, 2006-Ohio-1912, ¶16.

**{¶ 45}** The size of the verdict alone is insufficient to demonstrate passion or prejudice. *Rinehart*, supra, citing *Airborne Express, Inc. v. Sys. Research Laboratories, Inc.* (1995), 106 Ohio App.3d 498, 510, 666 N.E.2d 584. "'[T]here must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the [factfinder].'" *Pesic*, at ¶23, citing *Shoemaker v. Crawford* (1991), 78 Ohio App.3d 53, 65, 603 N.E.2d 1114.

**{¶ 46}** A trial court's judgment on a Civ.R. 59 motion for a new trial is reviewed under the abuse of discretion standard. *May v. Marc Glassman, Inc.*, Cuyahoga App. No. 93966, 2011-Ohio-1581, at ¶12, citing *Eddingham v. XP3 Corp.*, Portage App. No. 2006-P-0083, 2007-Ohio-7135. The decision to grant a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed upon appeal unless there has been an abuse of that discretion. Id., citing *Pena v. N.E. Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 104, 670 N.E.2d 268.

**{¶ 47}** Appellant argues that the jury awarded her inadequate damages due to the arguments of appellee's counsel, which, appellant asserts, wrongfully inflamed the sensibilities of the jury such that the verdict was given under the influence of passion or prejudice.

**{¶ 48}** As an initial matter, appellant's argument presumes that the jury's verdict was the result of opposing counsel's remarks as opposed to the more likely explanation

that the jury found that appellant failed to establish that the bulk of her medical bills were proximately caused by the subject accident.

{¶ 49} As each of appellant's complaints stem from closing remarks of opposing counsel, we note that "'"inferences drawn from the evidence in the cases are a legitimate source of argument.'"'" *Roscoe-Herbert v. Fabian*, Cuyahoga App. No. 88558, 2007-Ohio-3263, at ¶41, quoting *McBride* at ¶79, quoting *Jackson v. Booth Mem. Hosp.* (1988), 47 Ohio App.3d 176, 180, 547 N.E.2d 1203. "'[I]t is axiomatic that great latitude is afforded counsel in the presentation of closing argument to the jury. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. The assessment of whether these bounds have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion.'" Id.

{¶ 50} Appellant cites three separate instances where she argues opposing counsel inflamed the sensibilities of the jury. First, appellant complains that opposing counsel improperly argued that appellant deliberately mislead Dr. Moore by not revealing her July 19, 2007 motor vehicle accident to him. However, at trial it was established that appellant in fact did not disclose her second accident to Dr. Moore. Dr. Moore had expressed his opinion that the appellant's extensive medical bills were proximately related to the subject accident and that the information had been provided to him by

appellant. Appellant's credibility on this precise issue was called into question and impeached at trial when she denied being injured in the later accident despite later alleging the opposite in her Lake County lawsuit. Appellee was free to argue an inference drawn from this evidence.

{¶ 51} Appellant secondly takes issue with the following portion of appellee's closing argument:

> "Again, there's different theories that you have on the case. To me, there's glaring things that shoot at me, like this other wreck and Dr. Moore not knowing. There's issues that you'll see early on. When she first started going to Dr. Kim, she never heard of Kim, Attorney Maly suggested Kim. It says right in the record, her first visit with that doctor, July 6th, she already had the attorney dialed in. Is it something directed all through counsel or is this a combination of both?"

{¶ 52} Appellee's argument in this above excerpt is based upon appellant's credibility that was repeatedly called into question at trial. Appellee challenged appellant's contention that all of the medical expenses incurred were proximately related to the subject accident and appellant's credibility was a central part of this argument. Appellant further admitted at trial that after her visit to the emergency room, the first professional she consulted was her attorney who in turn directed her to Dr. Kim.

{¶ 53} Finally, appellant takes issue with opposing counsel's remark that appellant, "asked for $125,000" based upon her injuries in the July 19, 2007 accident. Appellant argues that there is no support in the record for this number. Appellant's argument is refuted by the Lake County complaint that alleges that appellant and her

husband were injured in the accident and seek recovery in excess of the defendant's insurance policy, "such limit being $25,000 ***per person***" and recovery from uninsured/underinsured motorists coverage, "in the amount of $100,000 ***per person***." (Emphasis added.)

**{¶ 54}** After reviewing the record, we do not find the trial court abused its discretion in denying a new trial on the ground that the jury awarded "excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice." Appellant's fourth assignment of error is overruled.

**{¶ 55}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR

Appendix

*Assignment of Error No. 1*:
"The Jury's award of $7,338.21 ($3,695.35 for past economic damages and $3,642.86 for past non-economic damages) was against the manifest weight of the evidence."

*Assignment of Error No. 2*:
"Where the defendant-appellee acknowledged that he was responsible for some of plaintiff-appellant's damages but argued that the balance of the damages were attributable to a subsequent car accident involving another tortfeasor, and the appellee failed to present evidence in support of the apportionment of the damages among the appellee and the other tortfeasor, the jury's award of $7,338.21 was contrary to Ohio law."

*Assignment of Error No. 3*:
"The trial court erred in allowing evidence of a lawsuit relating to another automobile accident that plaintiff-appellant was involved in after the accident giving rise to the present litigation."

*Assignment of Error No. 4*:
"The trial court judge abused his discretion in denying plaintiff-appellant's motion for a new trial where the jury's award of damages to appellant was inadequate, and was made under the influence of passion or prejudice."